By the Court. Hoffman, J.
Upon the appeal from the judgment in this case, two questions arise. First, whether the permit granted by the deputy street commissioner, to encumber the street by allowing the bricks to be placed upon the carriageway, was a lawful permit. This question arises under the excep- ' tion of the plaintiffs, to the charge of the Judge.
Next. Whether the notice to remove the bricks was sufficient; and whether the charge of the Judge was in this particular correct.
It is obvious, that if the permit was lawful, the removal was illegal. It must be so even if the defendant was ignorant of the permit.
On the 22d of May, 1854, a permit was granted by Charles Turner, deputy street commissioner, as follows:—“ Permission is given to Joseph Naylor, to place material on the carriage-way of the street in front of the building to be erected S. W. comer of *163 Broadway and Chambers street, for three months, provided such materials do not occupy more than one-third of the carriage-way in width, to be not more than ten feet in height, and one hundred feet in length of such carriage-way; and also, that the gutter along the sidewalk be kept clear and unencumbered to the breadth of two feet, and that the street remain so encumbered during the pleasure of the street commissioner.”
It is in evidence that the street commissioner is in the habit of giving such permits to builders to encumber streets during the progress of tearing down old buildings.
On the 27th of May, 1854, before twelve o’clock at noon, the notice to remove the bricks was posted upon the pile. It directed the removal on or before the 28th, at twelve o’clock, or the bricks would be taken to the public yard, to be disposed of, as the ordinances of the corporation direct, and was signed by the defendant, as commissioner of streets and lamps.
On the 29th of May, and between seven and eight o’clock in the evening, the bricks were delivered to the keeper of the corporation yard.
On the 7th of July, the plaintiff, for the first time, communicated with the defendant as to the removal of the bricks. The son of the plaintiff then went to the office to inquire where the bricks were; he was informed they were in the corporation yard. He asked for a bill, which was given him, dated Thursday. The charges are for cartage of 210 loads, and storage for forty days, $504.
It is plain that the plaintiff knew where to apply for his bricks, and that the amount of the last item is attributable to his own neglect or speculation.
The defendant, in his answer, justifies his removal of the bricks, under the 318th and 325th sections of the ordinance organizing the department, passed May 30th, 1849. The defendant was, at the time, commissioner of streets and lamps, the chief officer in the department of streets and lamps. ° In this department is a bureau, denominated “ The Bureau of Cleaning Streets,” charged with the duty of cleaning the streets,% and removing encumbrances therefrom, the chief officer of which is the superintendent of streets.
He then states, that the bricks were encumbering and obstruct *164 ing the streets, and that Erastus W. Glover, being at that time superintendent of streets, and chief officer of the bureau, did, in conformity with the ordinance aforesaid, order the bricks to be removed from the street, and on the failure of the owner to remove them, the said Glover did remove them to the public yard.
The charter of the 2d of April, 1849, provided, (§ 12,) that there should be an executive department, under the denomination of “The Street Department,” which shall have cognizance of opening, regulating, and paving streets, building and repairing wharves and piers, digging and building wells, and the construction of public roads when done by assessment: the filling up of sunken lots, under the ordinances of the common council, from the city inspector’s department. It shall also have cognizance of collecting the assessments connected with such expenditures. The chief officer shall be called the street commissioner. (Davies Laws, p. 206.)
The 11th section provided, that there shall be an executive department, to be denominated “ The Department of Streets and Lamps," which shall have cognizance of procuring the necessary supplies for, and of lighting the public streets and places lighted at the expense of the corporation, and of cleaning the public streets, and of collecting the revenue arising from the sale of manure, and also of transferring the butchers’ stalls in the public markets, the commissioner of streets and lamps. “ There shall be three bureaus in this department, and the chief officers thereof shall be called the superintendent of lamps and gas, superintendent of streets, and superintendent of markets.”
By the 19th section, it is declared lawful for the common council to establish such other departments and bureaus as they may deem the public interest may require, and to assign to them and those herein created, such duties as they may direct, not inconsistent with this act.
It would be very difficult to say to which department, under the charter, the power of removing obstructions on streets had been conferred. If upon the street department, it is solely by force of the word, “ regulating,” in the 12th section.
In the history of laws and ordinances respecting the streets of New York, I apprehend the received meaning of the word “regulating,” was the patching, grading, levelling, raising, or amending *165 the streets. These are the phrases used in the act of 1813, (section 175,) copied from former statutes.
If the department of streets and lamps claims the right, it is only by force of the power of supervising the cleaning of the public streets. This is, perhaps, a still slighter foundation.
I have not a doubt that an ordinance of the corporation, giving the power of removal, or of permission to obstruct, to either of these departments, or to any other department, would be perfectly valid.
The ordinances of May 30th, 1849, were adopted to carry out the new organization of' the city government.
Title 4 is entitled, “of the street department,” in the first article, and repeats, verbatim, the powers given in the 12th section of the charter.
The second article is entitled, “ of the street commissioner, his deputy, and clerks.”
By the 163d section, power is given to the street commissioner to direct the removal of any article or thing whatsoever, which may encumber or obstruct a street, wharf, or pier, in the city.
The second chapter of this article regulates the office of deputy street commissioner. No authority is given to him to direct the removal. The only section which bears upon the point, is the 184th, directing that he may perform such, duties as shall be assigned to him by the street commissioner. This means, that he may be authorized to perform a power vested in the commissioner; but there must be a regular written delegation, or such a custom known to the commissioner, as is equivalent to it.
The 286th section, under title 4, of the department of streets and lamps, repeats the language of the 14th section of the charter, but adds, after the words, “ cleaning the public streets,” &c., the clause, “ and removing encumbrances therefrom. ”
By the 311th section, under the head of “ the bureaus of cleaning streets,” the chief officer is called the superintendent of streets, who is charged with the duty of cleaning the public streets, and of removing encumbrances therefrom.
The 318th section is as follows:—“The superintendent of streets is hereby authorized, and it is made his duty, to order any article, or thing whatever, which may encumber or obstruct a street, wharf, or pier, to be removed, and if it be not removed *166 within twenty-four hours thereafter, to order it to be removed to the yard occupied by the superintendent of repairs, or other suitable place.”
By the 316th section, he is to report to the commissioner of streets and lamps all violations of any contract for cleaning the streets, and any omission or neglect of any person whose duty it is to inspect the streets or roads, or to prevent any encumbrance thereof.
The 321st section allows a redemption of the articles by the owner, upon payment of the necessary expenses of the removal, together with six cents per day, for every cart-load thereof, during the time it remains unclaimed.
The 325th section provides, that the superintendent of streets shall, in all matters connected with Ms bureau, be under the control, direction and supervision of the commissioner of streets and lamps, who may approve or disapprove all accounts certified by Mm, &c.
It appears to us very clear, that the commissioner of streets and lamps has no power to order a removal. It must come from the superintendent of streets. It is an authority which the common council had the power to give to the officer, and they have given it, expressly, to the superintendent; and have not given it to the commissioner. The 325th section by no means bestows this authority on the latter.
It is also clear, that there is no express provision, authorizing any one to give a permit to obstruct; but it may be well concluded, that a power to order a removal involves this authority.
And then we have the anomalous and inconvenient rule existing, of a concurrent power in the street commissioner, under the 163d section, and of the superintendent of streets, under the 318th section, to order a removal; and a power in each, by inference, to allow the obstruction to remain.
The result appears to me clear. The permit given by the deputy street commissioner was invalid. The notice to remove the bricks, by the commissioner of streets and lamps, the defendant, does not appear to have been authorized by the superintendent of streets, and was void. It is to be noticed, that the answer places the defence upon an order, made by E. W. Glover, then being superintendent of streets; and that he did remove the same. But there *167 is not any evidence, whatever, to prove an authority derived from him.
We consider that the views now taken are sufficient to dispose of the case, without passing upon the question of the sufficiency of the notice, by posting it upon the pile of bricks. That question, is one upon which some of the court entertain great doubts. It may be observed, that in the ordinances of 1854, (chap. 24, title 2,) the second section gave the street commissioner power to order the removal of any obstruction or encumbrance; and the third section directed the mode of service of the order, either personally, or by leaving it at the house or place of business of the owner, occupant, or person having charge of the house or lot, in front of which the encumbrance may be, or by posting the said notice, or order, upon such encumbrance or obstruction. (Page 288.) A similar provision is found in the ordinances of 1839, (p. 193;) of 1833, (p. 57, sections 23 and 24.)
In 1817, (p. 22, § 15,) the ordinance directed a personal service on the owner, occupant, or person in charge of the above house or lot, in front of which the obstruction or encumbrance might be.
It is to be noticed, that the general repealing clause, in the ordinance of 1849, (§ 509,) repeals all ordinances and resolutions inconsistent with that ordinance. No direction is contained, in any part of the ordinance of 1849, as to the mode of service; and it may be a point of no little consequence, whether the whole provision of that of 1845, as to such mode of giving service, is not nowin frill force.
It should also be observed,-that, even if the fifth section of title 2, of the ordinance of 1845, recognizing the right of the street commissioner to give a permission to obstruct a street, is strictly in force, it seems to be superfluous, for the power to order the removal, implies a power to permit an encumbrance to remain. That power rests in both the street commissioner and superintendent of streets, as before observed. And it may deserve consideration, whether it should be allowed to continue concurrent.
The judgment recovered must, therefore, be affirmed, with costs.